## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BELOIS CRAVEN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-24-1936** |
| **WALMART, INC.,** | * | |
| **Defendant.** | * | |

## MEMORANDUM OPINION

On May 16, 2024, Plaintiff Belois Craven initiated this action in the Circuit Court for Baltimore County, Maryland, against Defendant Walmart, Inc. (Walmart), alleging negligence arising from a malfunctioning scooter at a Walmart store, and seeking in excess of $75,000 in damages.  ECF No. 2.  On July 3, 2024, Walmart removed the case to this Court on the basis of diversity jurisdiction.  ECF No. 1.  Pending before the Court is Walmart's motion for summary judgment (ECF No. 33), which is fully briefed (ECF Nos. 34–35).  No hearing is necessary. Local Rule 105.6 (D. Md. 2025).  For the reasons set forth below, Walmart's motion is granted.

## I.    BACKGROUND

Ms. Craven alleges in her Complaint that on February 11, 2023, she visited a Walmart store in Rosedale, Maryland.  ECF No. 2 ¶ 3.  After entering the premises and obtaining a scooter, Ms. Craven alleges that "the scooter began to malfunction and perform erratically," which resulted in "Defendant's scooter crash[ing] into a shelf, causing the shelf to fall on Plaintiff's leg, causing significant injuries."  *Id.*  Ms. Craven alleges one count of negligence based on Walmart's failure to correct the dangerous condition of the scooter and failure to warn her accordingly.  *Id.* at ¶ 6.

Ms. Craven testified at her deposition that she encountered difficulties with two different scooters at the Walmart store. ECF No. 34-1 at 27:10–29:9.[1] Ms. Craven was unable to start the first scooter that she attempted to operate. *Id.* at 27:10–17. Ms. Craven located a second scooter, which did not appear broken or out of the ordinary. *Id.* at 27:18–28:20. Ms. Craven started that scooter without any difficulty and noted that the ride was initially smooth, but slow. *Id.* at 28:21–29:16. Ms. Craven drove the scooter directly to the men's clothing department. *Id.* at 30:8–11. After a "couple seconds" the scooter "started jerking." *Id.* at 29:17–19. The scooter's jerking motions began around the same time Ms. Craven arrived at the men's clothing department and noticed that "[a] lot of clothes were on the floor."[2] *Id.* at 29:10–11, 29:20–30:2, 30:12–14. Ms. Craven did not know how long the clothing had been on the floor, how the clothing got on the floor, or who had caused the clothing to be there. *Id.* at 30:20–31:2, 46:16–20. Ms. Craven attempted to make a U-turn and ride the scooter around the clothing, but she could not do so because some of the clothing got caught in the scooter tire. *Id.* at 31:4–32:1. According to Ms. Craven's deposition testimony, no Walmart employees or customers were in the men's clothing department at this time. *Id.* at 43:10–18, 46:2–8. After untangling the clothing from the scooter tire, Ms. Craven drove the scooter to the store's exit. *Id.* at 41:18–42:5.

Ms. Craven testified that after she left the store and was standing outside by the door another person told her that there was blood on her pants. *Id.* at 35:17–20, 36:5–8, 42:12–43:3.

---

[1] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document, except that page numbers of exhibits that are deposition transcripts refer to the page and line number of the deposition transcript.

[2] Ms. Craven contradicted herself several times throughout her deposition, at times testifying that the scooter began jerking before becoming tangled in the clothing, and at other times testifying that she first noticed the scooter jerking when the clothing was on the floor. ECF No. 34-1 at 28:11–12, 29:10–13, 29:17–30:2, 38:19–39:2, 39:20–40:6, 41:18–20, 70:15–71:12, 74:15–75:6.

This was the first time Ms. Craven realized that she had been injured. *Id.* at 42:12–18. Ms. Craven went to the hospital, where she was treated for a laceration at the hospital and received stitches. *Id.* at 44:12–45:8, 55:14–20, 57:10–13. Ms. Craven produced a photograph of the laceration and stitches from her doctor. *Id.* at 45:15–18; *see also* ECF No. 34-4.

As to the cause of the laceration, Ms. Craven testified that she scraped her leg against a shelving unit while attempting to back the scooter out of the clothing that was caught in the tire. ECF No. 34-1 at 33:9–34:6. Ms. Craven also testified that she did not feel her leg touch the shelving unit because she has a numb leg, and she only knew that her leg had touched the shelf because a person outside the store said her leg was bleeding. *Id.* at 35:21–36:8. The shelving unit did not appear broken or out of the ordinary in any way, and Ms. Craven knew where the shelving unit was in relation to her scooter. *Id.* at 34:16–35:13. Contrary to the allegations in her Complaint, Ms. Craven testified at her deposition that the shelf did not fall. *Id.* at 66:12–17. Ms. Craven's claim that her leg was cut on the shelf inside the Walmart store rests on her testimony that she did not go anywhere in the store other than the men's clothing department. *Id.* at 36:5–18 ("Because after I left that particular location, I came outside and my leg was bleeding and . . . that's the only place I went in the store.").

Ms. Craven did not see any Walmart employees outside of the store when she was made aware of the blood on her pants and she did not notify any Walmart employees of the scooter's alleged defects or her injury on the date of the occurrence, February 11, 2023. *Id.* at 43:4–44:10. Ms. Craven did not take any photographs while she was in the store on February 11, 2023. *Id.* at 45:8–46:1. Ms. Craven returned to the store on February 13, 2023, to speak with a security guard. *Id.* at 49:1–13. Ms. Craven informed the security guard about her leg injury, and she went with the security guard to the area of the store where she alleges she had been injured. *Id.* at 49:19–50:10. Ms. Craven testified that the clothing racks had been rearranged from two days

3

prior, so she could not locate the shelf in question. *Id.* at 50:20–51:8. Ms. Craven was also

unable to identify the scooter she had used on February 11, 2023. *Id.* at 52:20–53:16.

In Defendant's Answers to Plaintiff's Interrogatories, Walmart explains that "repairs to

electric carts are made on an as needed basis," and "a technician conducts biannual inspections

of all electric carts in the store." ECF No. 34-3 at 5–6.

## II.    DISCUSSION

Ms. Craven alleges that Walmart breached its duty to protect her from dangerous

conditions on the premises and failed to warn her of such dangerous conditions. ECF No. 2

¶¶ 5–6. Walmart argues that summary judgment is appropriate because Ms. Craven has failed to

prove that it negligently caused the cut on her leg.[3] ECF No. 33-1 at 6–7.

### A.    Standard of Review

Summary judgment motion practice "is properly regarded . . . as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting

Fed. R. Civ. P. 1). Federal Rule of Civil Procedure 56 provides that the district court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very

terms, this standard provides that the mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*,

477 U.S. 242, 247-248 (1986) (emphasis in original). A material fact is one that "might affect

---

[3] Walmart also contends that it is not liable for Ms. Craven's injuries because Ms. Craven
assumed the risk of her injuries and was contributorily negligent when she drove the scooter into
a shelf. ECF No. 33-1 at 13–15. Because the undisputed material facts have failed to establish a
breach of a duty that caused Ms. Craven's injury, it is unnecessary to reach this alternative
argument.

the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, to defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). On the other hand, summary judgment "is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law." *Sylvia Dev. Corp.* v. *Calvert C'nty, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

The Fourth Circuit Court of Appeals has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs* v. *North Carolina Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2728 (3d ed. 1998)). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001). To survive summary judgment, the nonmoving party must provide evidence, "not unsupported conjecture." *Graves* v. *Lioi*, 930 F.3d 307, 324 (4th Cir. 2019). Thus, "[h]earsay statements or conclusory statements with no evidentiary basis cannot

support or defeat a motion for summary judgment." *Alston* v. *Astrue*, Civil Action No. L-10-3446, 2012 WL 665982, at *4 (D. Md. Feb. 28, 2012), *aff'd*, 474 Fed. Appx. 390 (4th Cir. 2012).

### A.     Negligence

In an action brought under a federal court's diversity jurisdiction, the Court is to apply the substantive law of the state in which it sits. *Mathis* v. *Terra Renewal Serv. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis* v. *Waletzky*, 422 Md. 647, 657 (2011). In Maryland, "[t]he elements of a cause of action for negligence are (1) a legally cognizable duty on the part of the defendant owing to the plaintiff, (2) a breach of that duty by the defendant, (3) actual injury or loss suffered by the plaintiff, and (4) that such injury or loss resulted from the defendant's breach of the duty." *Green* v. *N. Arundel Hosp. Ass'n, Inc.*, 366 Md. 597, 607 (2001).

In the context of premises liability, a property owner's duty of care to one who enters the property depends upon the entrant's legal status. *Baltimore Gas & Elec. Co.* v. *Flippo*, 348 Md. 680, 688 (1998); *Rivas* v. *Oxon Hill Joint Venture*, 130 Md. App. 101, 109 (2000). Maryland law recognizes four classifications of entrants: "an invitee (*i.e.*[,] a business invitee), a licensee by invitation (*i.e.*, a social guest), a bare licensee, or a trespasser." *Tennant* v. *Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 387-388 (1997). "The highest duty is owed to a business invitee, defined as 'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Id.* at 388 (quoting *Casper* v. *Chas. F. Smith & Son, Inc.*, 71 Md. App. 445, 457 (1987), *aff'd*, 316 Md. 573 (1989)). A store owner is not, however, an insurer of the safety of customers, *i.e.*, business invitees, and there is no presumption of negligence on the part of the owner merely from the fact that a customer sustained an injury in the owner's store. *Giant Food, Inc.* v. *Mitchell*, 334 Md. 633, 636 (1994); *Moulden* v. *Greenbelt Consumer Serv., Inc.*, 239 Md. 229, 232 (1965).

A store owner must only "exercise reasonable care to 'protect the invitee from injury caused by an unreasonable risk' that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care." *Tennant*, 115 Md. App. at 388 (quoting *Casper*, 71 Md. App. at 457). Thus, to sustain a negligence cause of action in a premises liability case, the business invitee must show that the store owner created the dangerous condition or had actual or constructive knowledge that it existed. *Moulden*, 239 Md. at 232; *Rehn* v. *Westfield Am.*, 153 Md. App. 586, 593 (2003); *Tennant*, 115 Md. App. at 389.

Here, the record is devoid of any such evidence. Ms. Craven testified that the scooter did not appear broken or out of the ordinary in any way before she began to operate it, she did not have trouble starting the scooter, and it initially rode smoothly, but slowly. *See* Section I, *supra*. The scooter began "jerking" when Ms. Craven arrived in the men's clothing department where there was clothing on the floor. As noted, Ms. Craven contradicted herself throughout her deposition testimony as to whether the scooter began jerking on its own or after clothing became caught in one of the scooter tires. Ultimately, there is no evidence that a Walmart employee created this condition or had knowledge of it, regardless of whether the scooter malfunctioned independently or simply became tangled in clothing that was on the floor. Ms. Craven acknowledged in her deposition that she did not know how the clothing had come to be on the floor or who was responsible for it being there. She further acknowledged that there was no Walmart employee in the area, and she did not notify any Walmart employee of her difficulty with the scooter and clothing or her injury. Thus, the only remaining question regarding Walmart's alleged breach of its duty of care is whether Walmart had constructive knowledge of a dangerous condition.

Ms. Craven bears the burden of establishing Walmart's constructive knowledge, which includes a showing of "how long the dangerous condition existed." *Joseph* v. *Bozzuto Mgmt. Co.*, 173 Md. App. 305, 316 (2007); *see also Moulden*, 239 Md. at 232-233.  The rationale for this requirement is that when a plaintiff relies on constructive knowledge, the invitee "must demonstrate that defective condition existed long enough to permit one under a duty to inspect to discover the defect and remedy it prior to the injury." *Joseph*, 173 Md. App. at 316-317 (emphasis removed); *see also Tennant*, 115 Md. App. at 389-390 ("The mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it.") (quoting W. PAGE KEETON, *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS, § 61, at 426 (5th ed. 1984)).  Accordingly, a store owner charged with failing to maintain the premises in a reasonably safe condition is entitled to summary judgment if there is no evidence showing that the hazardous condition existed long enough for the owner to remedy the hazard or warn of its existence. *Zilichikhis* v. *Montgomery C'nty*, 223 Md. App. 158, 187 (2015).

Viewing the evidence in the light most favorable to Ms. Craven and making all inferences in her favor, Walmart is entitled to judgment as a matter of law because Ms. Craven has failed to show that Walmart had constructive knowledge that an unreasonable risk or dangerous conditions existed.  To establish constructive notice, Ms. Craven relies on the contentions that Walmart's biannual inspections of the scooters on its premises were insufficient and Walmart could not state when the scooter involved in the alleged incident was last inspected.  These contentions cannot carry Ms. Craven's burden because there is no evidence of how long any alleged defective condition of the scooter had existed.  Additionally, there is no evidence of how long the clothing was on the floor in the men's clothing department before Ms. Craven drove the scooter into that area.  Thus, any finding that Walmart should have had knowledge of any

defective condition regarding the scooter and/or clothing would rest on "pure conjecture and not a reasonable inference." *Moulden*, 239 Md. at 233 (internal quotation marks and citation omitted).

Finally, even if there were evidence of Walmart's breach of a duty, Ms. Craven has not established that it was the cause of her injury. There is no evidence, beyond Ms. Craven's own speculation, that the laceration on her leg occurred because of a dangerous condition within the Walmart store. *See* Section I, *supra.* Ms. Craven did not know that she had been injured until another person saw blood on Ms. Craven's pants as she stood outside the premises. Ms. Craven surmised that she must have been injured when her leg hit a shelf inside the store, but she did not feel her leg hit the shelf and no one saw what happened. Further, Ms. Craven did not inform any Walmart employees of her injury until two days later. On the day that Ms. Craven did inform a Walmart employee about her injury, she was unable to identify either the scooter she used on the day of the alleged incident or the shelf that she alleges cut her leg. Walmart is therefore entitled to summary judgment on Ms. Craven's sole claim.

## III.    CONCLUSION

For the foregoing reasons, Walmart's motion for summary judgment (ECF No. 33) is granted. A separate Order follows.


Date: July 15, 2025                          _____/s/_____
                                             Erin Aslan
                                             United States Magistrate Judge